IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO. 06-30068-WDS |
| ) | |
| ROHAN G. HERON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion to suppress evidence and statements (Doc. 28), to which the government has filed a response (Doc. 55). The Court held an evidentiary hearing on the motion and took the matter under advisement pending further briefing by the parties. The post-hearing briefs have now been filed (Docs. 82, 83). At the hearing, the defendant indicated that he did not wish to proceed on the motion to suppress evidence, but only on that part of the motion directed to the suppression of statement.[1] Therefore, the Court will only consider the motion as it is directed to the defendant's statements.

Defendant is charged in a single count indictment with knowingly and intentionally possessing with intent to distribute five kilograms or more of a mixture of substance containing cocaine and 1000 kilograms or more of a mixture or substance containing marihuana, all in violation of 21 U.S.C. § 841(a)(1).

## BACKGROUND

The record before the Court reveals that the defendant was arrested on May 10, 2006, as

---

[1] The defendant conceded at the hearing that he lacked standing to contest the seizure of the evidence.

the result of a traffic stop. Between May 8 and 10, 2006, a confidential source provided information to the Drug Enforcement Administration that a semi-tractor trailer would deliver marijuana in the Metro East area, and that the drugs would be in the sleeper area of the truck. DEA set up surveillance in Caseyville, Illinois, at a restaurant early on the morning of May 10, 2006, and observed a white semi-truck and trailer at the restaurant. Agents watched two males, later identified as defendant Heron, and defendant Hamilton, unhook the trailer and drive off in the semi-truck and turn onto Route 157. Caseyville Illinois Police Officer Greg Hosp, who was working with DEA, observed the truck turn right onto Route 157 without using a turn signal, and stopped the truck for a traffic violation. Soon thereafter, Officer Tim Crimm and canine officer Britt arrived on the scene. The dog alerted to the passenger side door. The officers searched the interior of the truck and found numerous bales of marijuana wrapped in black trash bags.

DEA Special Agent Cynthia Scott testified that early that same morning she received a call from the Fairview Heights Police Department that the defendant wanted to speak to DEA. Special Agent Scott and Task Force Officer Wade Gummersheimer went to the police station to see what the defendant wanted. They saw Heron at the jail at approximately 4:00 A.M on May 10, 2006. He was brought to an interview room and Special Agent Scott and Officer Gummerscheimer identified themselves to the defendant. They then told him that they were there to listen to what he had to say, and the defendant gave them a statement. They did not read him his *Miranda* rights, and did not conduct an interrogation, but did ask him questions in response to matters he had given in his statement to clarify some issues. The entire interview lasted approximately 45 minutes. Special Agent Scott testified that they did not meet with the defendant in an attempt to conduct an interrogation, they just wanted to see why he had asked to talk to them. She also testified that she assumed that the Fairview Heights Police had *Mirandized* Heron because he had asked to speak to DEA.

DEA Special Agent Mike Rehg testified that he interviewed the defendant the next day, about the stop and the contents of the truck.  Before interviewing the defendant, Special Agent Rehg gave the defendant his *Miranda* warnings and the defendant agreed to speak with him.  The defendant basically told Special Agent Rehg what he had said the day before: that he knew the marijuana was in the truck when Hamilton arrived at the truck stop in Phoenix and that he went ahead and rode with Hamilton anyway.

## **DISCUSSION**

The Seventh Circuit has held that "[a] confession is voluntary if, in the totality of circumstances, it is the 'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001) (*quoting United States v. Dillon*, 150 F.3d 754, 757 (7th Cir.1998)); *See also, United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir. 2004). "[C]oercive police activity is a 'necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.'" *Huerta*, 239 F.3d at 871 (*quoting Colorado v. Connelly*, 479 U.S. 157, 167(1986)). Factors relevant to a determination that police conduct is coercive include "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *Id.*

The defendant asserts that the government agents used a two-step procedure which has been condemned by the Supreme Court in the plurality decision in *Missouri v. Seibert*, 542 U.S. 600 (2004).   In *Seibert*, the Supreme Court held that "post-warning statements are inadmissible if they duplicate pre-warning statements intentionally elicited in an effort to evade *Miranda*." *United States v. Peterson*, 414 F.3d 825, 828 (7th Cir. 2005).   The issue, under *Seibert* is

whether *Miranda* warnings were deliberately withheld until after the suspect confesses. The Seventh Circuit has stated:

> The thinking behind this is that a suspect who has been induced to make a statement may see little point in clamming up after warnings have been given; he may think that the cat is out of the bag. Moreover, eliciting a statement before the suspect has been informed of his rights implies that the warnings and rights are charades, which reduces the chance that the suspect will invoke his constitutional privilege.

*Peterson*, 414 F.3d at 828.

The critical question, therefore, is whether the record reveals that the "officers intentionally withheld *Miranda* warnings as part of a deliberate strategy to elicit inculpatory statements in circumvention of *Miranda*." *United States v. Stewart*, 191 Fed. Appx. 495, 498 (7th Cir. 2006). The critical inquiry, as the court noted in *Stewart* is:

> If the sequential interrogation process was used in deliberate circumvention of *Miranda* and there is insufficient separation in time and circumstances between the unwarned and warned confessions, then the warned confession was improperly admitted . . . If, on the other hand, the interrogation process at work here was not a deliberate end run around *Miranda*, then [the defendant's] first statement must be evaluated for voluntariness under [*Oregon v.*] *Elstad,* [470 U.S. 298 (1985)].

191 Fed. Appx. at 498. Here, there is no dispute in the record that the defendant was in custody when he gave his first statement to Special Agent Scott and Officer Gummerscheimer, and that he was not given his *Miranda* warnings before talking to the officers. But, the record is also clear that the defendant is the one who initiated the contact with the officers. The officers clearly did not approach him, but went to the jail only in response to a request the defendant made to talk to them. The government would have the Court find that the defendant's first statement was voluntary, and therefore not an interrogation. Although the Court **FINDS** that there is no evidence that the officers, during the defendant's first statement, had any intent or strategy to deliberately withhold *Miranda* warnings in an attempt to get the defendant to confess,

the record is clear that there was questioning by law enforcement in response to the defendant's statement.  Although this is a close call, the Court **FINDS** that given the nature of the circumstances under which the statement was taken, the officers should have given the defendant his *Miranda* warnings before engaging in a conversation with him. The Court understands that defendants may sometimes blurt out statements, or volunteer information, but here the nature of the defendant's statement was such that the better course would have been to give him his *Miranda* warning.

However, that did not occur, and the Court's inquiry, therefore, turns to whether under *Elstad,* the *Mirandized* second statement given to Special Agent Rehg is separately admissible. "The Supreme Court held in *Elstad* that the failure to administer *Miranda* warnings prior to the defendant's initial inculpatory statement did not require suppression of his subsequent *Mirandized* confession." *United States v. Stewart*, 388 F.3d 1079, 1087 (7th Cir. 2004).  Further, "Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Id.* at 1087-88.

As the court stated in *Stewart*:

> However, "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" as to the second statement. [*Elstad*, 470 U.S.] at 314.  Where the initial unwarned statement was voluntary, the admissibility of the second statement depends only on whether it, too, was voluntary, and obtained in compliance with *Miranda. Id.* at 318.  Thus, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.*

*Peterson*, 388 F.3d at 1088.   Therefore, although the unwarned statement given to Special Agent Scott and Officer Gummerscheimer is not admissible, the Court **FINDS** that the statement

given by the defendant to Special Agent Rehg is not subject to suppression, and may be admitted at trial.  It is clear that Agent Rehg gave the defendant his *Miranda* warnings before he questioned him, and that the defendant appeared to understand those warnings, but chose to waive his rights and gave his statement to Agent Rehg.

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendant's motion to suppress evidence and statements.  The defendant advised the Court that he conceded that he lacked standing to contest the seizure of evidence and would not proceed on that portion of the motion.  Accordingly, defendant's motion to suppress evidence is **DENIED** as moot.  That part of the motion which seeks to suppress statements is **GRANTED** as to the defendant's statement given on May 10, 2006, to Special Agent Cindy Scott and Officer Wade Gummersheimer, and **DENIED** as to the defendant's statement given on May 11, 2006, to Special Agent Mike Rehg.

**IT IS SO ORDERED.**

**DATED: March 1, 2007.**

                                                             s/ WILLIAM D. STIEHL
                                                             **DISTRICT JUDGE**